**CASON ENTERPRISES, INC.**
etc., et al., Plaintiffs,

v.

**METROPOLITAN DADE COUNTY**
etc., et al., Defendants.

No. 95–2711–CIV.

United States District Court,
S.D. Florida.

Aug. 11, 1998.

Barton Stuart Sacher, Hornsby Sacher Zelman Stanton & Paul, Miami, FL, for Plaintiffs.

Thomas A. Tucker Ronzetti, Dade County Attorney's Office, Miami, FL, for Defendants.

### ORDER AFFIRMING MAGISTRATE JUDGE'S REPORT & RECOMMENDATION

GRAHAM, District Judge.

**THIS CAUSE** came before the Court upon (1) Defendant Metropolitan Dade County's Motion for Summary Judgment (DE 66) filed on September 18, 1997; and (2) the individual Defendants' Motion for Summary Judgment (DE 67) filed on September 26, 1997.

**THE MATTERS** were referred to the Honorable United States Magistrate Judge Ted E. Bandstra for all pretrial matters pursuant to 28 U.S.C. § 636. A Report & Recommendation dated July 24, 1998 has been filed recommending that the aforementioned motions be granted consistent with the report. The Court has conducted a *de novo* review of the file, has considered the Plaintiffs' objections and is otherwise fully advised in the premises. Accordingly, it is

**ORDERED AND ADJUDGED** that United States Magistrate Judge Bandstra's Report & Recommendation of July 24, 1998, is hereby RATIFIED, AFFIRMED and APPROVED in its entirety. Therefore, it is

**ORDERED AND ADJUDGED** (1) that Defendant Metropolitan Dade County's Mo-

tion for Summary Judgment (DE 66) filed on September 18, 1997 be GRANTED; and (2) that the individual Defendants' Motion for Summary Judgment (DE 67) filed on September 26, 1997 be GRANTED.

BANDSTRA, United States Magistrate Judge.

### REPORT AND RECOMMENDATION

**THIS CAUSE** came before the Court on (1) Defendant Metropolitan Dade County's Motion for Summary Judgment (D.E.66) filed on September 18, 1997; and (2) the Individual Defendants' Motion for Summary Judgment (D.E.67) filed on September 26, 1997. On December 8, 1995, this cause was referred to United States Magistrate Judge Ted E. Bandstra for all pretrial matters pursuant to 28 U.S.C. § 636. Accordingly, the undersigned conducted a hearing on these motions on May 21, 1998. Having carefully considered these motions, all responses and replies thereto, the evidentiary record in this case, oral argument of counsel and applicable law, the undersigned respectfully recommends:

(a) that Defendant Metropolitan Dade County's Motion for Summary Judgment be GRANTED; and

(b) that the Individual Defendant's Motion for Summary Judgment be GRANTED.

### BACKGROUND

On December 5, 1995, plaintiff, Cason Enterprises, Inc. ("CEI"), attempting to proceed *pro se,* commenced this action with the filing of a complaint against Miami Dade Water & Sewer Department, a department of Metropolitan Dade County (the "County"), and eight individual defendants (collectively "defendants") seeking compensatory and punitive damages for, *inter alia,* alleged civil rights violations arising out of a contract entered into between plaintiff and the County. On December 18, 1995, defendants moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim.

Thereafter, this Court ordered CEI to obtain counsel. On May 13, 1996, CEI, having obtained counsel, filed its verified amended complaint naming Richard Cason ("Cason"), an African–American and the sole shareholder of CEI as an additional plaintiff. Accordingly, defendants' motion to dismiss the original complaint was denied as moot by Court Order dated May 15, 1996.

The verified amended complaint, like the original complaint, sought damages and other relief against the County and eight of its officers/employees; namely, Victor Monzon Aguirre, Anthony J. Clemente, Gary Fabrikant, David Ruiz, Abe Rodriguez, Robert Ready, Greg Lane and Renaldo Abrahante (collectively "the individual defendants") for alleged violations of plaintiffs' constitutional rights under the Fourteenth Amendment to the United States Constitution and pursuant to 42 U.S.C. §§ 1981 and 1983. In addition, plaintiffs asserted pendent state law claims for breach of contract and tortious interference with a contract. The amended complaint also named Carus Chemical Company ("Carus") as an additional defendant.

On May 29, 1996, defendants moved to dismiss the amended complaint in its entirety for failure to state causes of action upon which relief could be granted pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Following full briefing, the motion was heard at oral argument before the undersigned on September 6, 1996. As a result, the undersigned issued a Report and Recommendation on October 16, 1996, recommending that defendants' motion to dismiss be granted in its entirety. In so recommending, the undersigned found that plaintiffs had failed to sufficiently allege that the County had adopted a "custom or policy" which deprived plaintiff Cason of his contractual rights, or that a constitutional violation occurred as a direct result of a policy or procedure of the supervising officials sufficient to establish municipal liability under 42 U.S.C. § 1983. The undersigned further found that the claims against the individual defendants should be dismissed because plaintiffs did not allege any actionable act or omission on the part of any of these defendants sufficient to establish a cognizable federal civil rights claim. In view of the foregoing findings, the undersigned also recommended the dismissal of plaintiffs' pendent state law claims.

On October 30, 1996, that Report and Recommendation was adopted by the District Court and this case was dismissed without prejudice. Following a Court ordered status conference, the District Court reconsidered the October 16 Report and Recommendation and reaffirmed its previous ruling that the amended complaint was properly dismissed without prejudice. By Order dated July 31, 1997, the Court granted plaintiffs thirty (30) days leave within which to file a second amended complaint.

On September 2, 1997, plaintiffs filed their verified second amended complaint seeking to recover damages and other relief against Metropolitan Dade County (the "County") and four of its employees, in their official capacities; namely, Victor Monzon–Aguirre,[1] Anthony J. Clemente, David Ruiz and Gary Fabrikant (collectively the "individual defendants") for alleged violations of plaintiffs' constitutional rights under the Fourteenth Amendment to the United States Constitution and pursuant to 42 U.S.C. § 1983. In addition, plaintiffs have asserted pendent state law claims for breach of contract and specific performance.

### UNDISPUTED FACTS

On or about June 15, 1994, the County solicited bids for the purchase of bulk granular potassium permanganate ("GPP"), a substance utilized in waste-water treatment for the purpose of controlling unpleasant and toxic odors and irritants. Sec. Am.Cpt., ¶¶ 14 & 15. The bid proposal required that the material be supplied in shipments of between 40,000 to 50,000 pounds with estimated deliveries every sixty (60) days. The proposal covered a two-year period, approximately July 1, 1994 through June 30, 1996, with an option by the County to renew for an additional one year. Sec. Am.Cpt., ¶ 17, Exhibit A. The County ultimately entered into a contract with CEI, the lowest responsive responsible bidder, for the purchase of GPP with an option by the County to purchase potassium permanganate ("PP") in liquid form. *Id.,*

¶ 25, Exhibits A & B. However, CEI was awarded this contract only after it had contested the County's initial recommendation to award the contract to the second-lowest bidder, Carus Chemical Company.

On November 2, 1994, the County issued a blanket purchase order for GPP to CEI for the period from November 1, 1994 through October 31, 1996, with the provision that deliveries against the purchase order be made at quantities and times as requested by the County. *Id,* Exhibit C. During the initial six-month period subsequent to the issuance of the purchase order, the County made only a single order of GPP. *Id.,* ¶ 28.

The County contends that it did not place additional orders because it had existing inventories of GPP from a previous supplier. *See* Declaration of Robert Ready. The County further maintains that during this time period, it experienced mechanical problems with the silo utilized for the automatic mixing of the GPP. As a result, the County could not use bulk dry PP but instead has to use either dry PP in drums or liquid PP. *Id.* The County then purchased drums of dry PP from another supplier, contending that Cason refused to sell PP in drums. *Id.,* Sec.Am. Cpt., ¶ 36.[2] Thereafter, on May 25, 1995, the County purchased 10,000 gallons of the liquid solution and 10,500 pounds of dry free flowing PP in drums from CEI for a total cost of $149,900.00. Am.Cpt., ¶ 38. In exchange, Cason purportedly agreed to waive all claims with respect to the contract and a release was executed which appears to have been signed by Cason. *Id.;* Ready Depo., pgs. 70–80. Cason maintains that his signature was forged. Am.Cpt., ¶ 38.

Meanwhile, on May 4, 1995, the County ordered 50,000 pounds of dry free flowing PP with delivery scheduled for June 29, 1995. On July 28, 1995, Cason sent a facsimile request for a 45 day extension on its delivery of dry PP in bulk form. *See* Ready Dec., Ex. G. By facsimile dated August 15, 1995, Ready authorized the extension (until September 11,

---

1. At the May 21 hearing, plaintiffs agreed, without objection, to dismiss Victor Monzon Aguirre as a defendant from this action. Accordingly, the undersigned recommends, without further discussion, the dismissal of Victor Monzon Aguirre from this case.

2. Cason testified that he did not recall whether the County requested the material in drums. *See* Cason Depo., Vol.II, pg. 85.

1995) and requested a quote for dry PP in drums. *Id.*, Exh. H. On August 9, 1995, Greg Lane, an operating specialist in the water and sewer department, requested a quote on liquid PP from Cason. Sec.Am.Cpt., ¶ 40, Exh. I. CEI replied with a quote of $7.50 per gallon. *Id.*, Exh. J. On August 17, 1995, Ready faxed back a response explaining that CEI's price for liquid PP was nearly 17 times the price of dry so that the County was only purchasing dry PP. *Id.*, Exh. L. Ready also noted that Cason declined to offer a proposal for dry PP in drums. *Id.* On September 8, 1995, Cason sent a request for a 330 day extension on the bulk delivery due on September 11, 1995. Ready Dec., Exh. M. The County declined Cason's request, but authorized an extension until December 12, 1995. *Id.*, Exh. O.

On December 19, 1995, the County ordered dry 40,000 to 50,000 pounds of GPP in bulk. Sec.Am.Cpt., ¶ 45. CEI was unable to supply the ordered bulk product. *Id.*, Exh. T. As a result, the County issued a vendor non-performance report on January 10, 1996, due to CEI's failure to deliver the GPP. Sec.Am. Cpt., ¶ 47. Cason was found to be in default and the contract was terminated on February 9, 1996. Exh. W.

In addition to the award of the GPP contract, CEI was also the successful bidder on a contract with the County for the supply of certain pesticide and herbicide chemical products for the Public Works Department (the "1018 contract"). Sec.Am.Cpt., ¶¶ 52 & 53. Plaintiffs allege compliance with this contract by the delivery of Surfac 910, a surfactant which purportedly met or exceeded the County's specifications under the 1018 contract, on July 12, 1996. *Id.* In February 1997, the County issued a vendor non-performance report indicating that the containers of Surfac 910 were leaking. *Id.*, ¶ 54; Declaration of Abeline Rodriguez. An addendum to the non-performance report was issued on March 4, 1997, stating, *inter alia*, that CEI delivered damaged containers, the product did not contain a material safety data sheet, the product was delivered late and it was not the product ordered (Induce). *Id.* Thereafter, representatives of Drexel Chemical Company, the manufacturer of Surf–Ac 910 took a sample of the product supplied by CEI for analysis. Testing revealed that the CEI product was comprised of 50% water, whereas Drexel's Surf–Ac 910 was 3% water. *Id.* CEI was then given the opportunity to conduct an independent analysis of its product, but never did. *Id.* Plaintiffs were then required to pay clean-up costs. *Id.*; Sec.Am. Cpt., ¶ 55. This contract expired by its own terms.

## STANDARD OF REVIEW

The court in reviewing a motion for summary judgment is guided by the standards set forth in Rule 56(c ) of the Federal Rules of Civil Procedure which provides as follows:

> .... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

The moving party bears the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Further, in addressing whether the moving party has satisfied this burden, the court is required to view the evidence and all factual inferences arising therefrom in the light most favorable to the non-moving party. *Clemons v. Dougherty County, Ga.*, 684 F.2d 1365, 1368 (11th Cir.1982), *citing, Adickes v. S.H. Kress & Co.*, 398 U.S. at 157, 90 S.Ct. at 1608; *Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir.1988). If the record presents issues of material fact, the court must deny the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. at 157, 90 S.Ct. at 1608. The non-moving party, however, cannot rest upon mere allegations, but must rebut any facts properly presented by the moving party through affidavits or other evidence demonstrating the existence of a genuine and material issue of fact for trial. *Id.* at 398 U.S. 155, 90 S.Ct. at 1607. Moreover, summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

## CONCLUSIONS OF LAW

In essence, plaintiffs assert that defendants conspired to deprive them of their due process rights and discriminated against Cason because of his race by, *inter alia*, failing to honor the contract, by dealing in bad faith, by ordering from other suppliers during the contract period, by failing to disclose the County's mechanical difficulties and by engaging in retaliatory conduct since the filing of this lawsuit as evidenced by their action concerning the 1018 contract. Based on the foregoing allegations and other alleged wrongdoing arising out of plaintiffs' contractual relationship with the County, plaintiffs have asserted claims against defendants for constitutional rights violations pursuant to 42 U.S.C. §§ 1981 and 1983 (Count I & II), for declaratory relief (Count III) and for state law claims of breach of contract (Count IV), and specific performance(Count V).

The County and the individual defendants have responded to the second amended complaint with the filing of the instant motions for summary judgment raising the issues addressed below.

### I. *Individual Defendants' Motion for Summary Judgment*

In essence, plaintiffs assert that the individual defendants discriminated against Cason because of his race in their dealings with him under the subject contracts and that such discriminatory actions constituted a violation of his civil rights under 42 U.S.C. § 1981 and 1983. The individual defendants respond by arguing that they are entitled to

entry of summary judgment in their favor for two primary reasons. First, the individual defendants argue that the evidence produced by plaintiffs is legally insufficient to support their claims of discrimination. Second, the individual defendants contend that they are entitled to qualified immunity from this suit.

### A. *Racial Discrimination under 42 U.S.C. §§ 1981 and 1983*

In Counts I and II of the second amended complaint, plaintiffs allege that defendants denied plaintiffs of their right to compensation under the contract without procedural safeguards, deprived plaintiffs of property without due process of law and discriminated against Cason because of his race in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §§ 1981 [3] and 1983.[4]

42 U.S.C. § 1981 forbids intentional discrimination based upon race in the making and enforcement of contracts. *See Rogers v. Mount Union Borough by Zook,* 816 F.Supp. 308, 312 (M.D.Pa.1993). Proof of intentional discrimination is required in order to establish liability under § 1981. *See General Building Contractors Association v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). Because liability is premised upon intentional discrimination, personal involvement of a defendant is essential. *See Jett v. Dallas Independent School District,* 491 U.S. 701, 735, 109 S.Ct. 2702, 2722–23, 105 L.Ed.2d 598. Liability under § 1981 is personal in nature and cannot be imposed vicariously. *See Boykin v. Bloomsburg University of Pennsylvania,* 893 F.Supp. 378 (M.D.Pa.1995).[5]

**3.** 42 U.S.C. § 1981(a) provides:

(a) **Statement of equal rights**

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pain, penalties, taxes, licenses, and exactions of every kind, and to no other.

**4.** 42 U.S.C. § 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of

the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

**5.** Although not raised by the individual defendants, the County correctly notes that Section 1981 cannot be used to sue state actors or entities. *See Jett v. Dallas Independent Sch. Dist.,* 491 U.S. 701, 731–32, 109 S.Ct. at 2720–21, 105 L.Ed.2d 598 (1989). For reasons discussed in more detail below, the undersigned recommends dismissal of plaintiffs' § 1981 claim on this basis. In any event, the analysis of municipal liability under § 1981 is the same as under § 1983. *Id.,* 491 U.S. at 735, 109 S.Ct. 2702.

■ Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. *See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981). Like § 1981, liability under § 1983 is also personal in nature, cannot be imposed vicariously and requires intent. *See Cross v. State of Ala.,* 49 F.3d 1490 (11th Cir.1995). The Supreme Court has held that the test for intentional discrimination in suits under §§ 1981 and 1983 are the same as the formulation used in Title VII discriminatory treatment causes. *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also Brown v. American Honda Motor Co.,* 939 F.2d 946 (11th Cir.1991).

■ Under this test, the initial burden rests with the plaintiffs to demonstrate by a preponderance of the evidence a prima facie case of discrimination. *Burdine* at 252–53, 101 S.Ct. 1089. This burden is not onerous and can be met by simply demonstrating that the plaintiff is a member of a minority group, that he met the requirements for the contract, that he was not given the contract and that the contract was eventually given to an individual who is not a member of a protected class. *Patterson,* 491 U.S. at 187, 109 S.Ct. 2363; *Brown,* 939 F.2d at 949.

■ If the plaintiffs establish a prima facie case, then the burden shifts to the defendants to proffer a legitimate, non-discriminatory reason for the action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the defendants carry this burden, the plaintiffs then have the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendants were merely a pretext for discrimination. *Id.* at 804, 93 S.Ct. 1817. "[A] reason cannot be proved to be a 'pretext for discrimination' unless it is shown both the reason was false and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515–17, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993).

Applying this analysis here, the undersigned finds that plaintiffs have met their burden of establishing a prima facie case. It is undisputed that Cason is African American and, thus is a member of a protected class. It is also undisputed that plaintiffs met the requirements for the subject contract, was awarded the contract, and that the contract was subsequently terminated and awarded to a non-minority vendor. Indeed, the individual defendants do not contest that plaintiffs have failed to establish a prima facie case of discrimination. Accordingly, the undersigned finds that plaintiffs have satisfied their burden of establishing a prima facie case of discriminatory treatment.

■ Since plaintiffs have established a prima facie case of discrimination, the individual defendants must come forward with evidence of a legitimate non-discriminatory explanation for the adverse contract action. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The defendants' burden at this stage is one of mere production, not persuasion, and is "exceedingly light." *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1495 (11th Cir.1989).

■ In this case, the individual defendants contend that plaintiffs' GPP contract with the County was terminated because CEI refused to supply drums of PP, its price for liquid PP ranged from 17 to 200 times the cost of dry PP, CEI requested numerous extensions on delivery including a 330 day extension on a contract that required a 14–day delivery, and ultimately failed to delivery the dry PP required by the contract. *See* Decl. of Robert Ready. With respect to the pesticide and herbicide contract, the individual defendants contend that plaintiffs were sanctioned because CEI's product was leaking, was delivered late, was not the product ordered and did not have the required documentation for safe handling of chemicals. *See* Decl. of Abelin Rodriguez. The undersigned finds that these reasons constitute a legitimate non-discriminatory explanation for the termination of CEI's contracts with the County. Accordingly, the individual defendants have met their burden and, thus, the burden shifts back to plaintiffs to demonstrate that the individual defendants' explanation is mere pretext for discrimination.

At this stage, plaintiffs are obligated to present more than simply some evidence, but, rather, must present "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the individual defendants were false, and that more likely than not [discrimination] was the real reason for the action." *See Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir.1994), *citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515–17, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "[B]ecause plaintiff bears the burden of establishing pretext, he must present 'significant probative' evidence on the issue to avoid summary judgment... Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination..." *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371 (11th Cir.1996) (citations omitted).

Plaintiffs make the following arguments to establish that the individual defendants' explanation for the termination of CEI's contracts with the County is pretextual:

#### i. *Gary Fabrikant*

With respect to defendant Gary Fabrikant ("Fabrikant"), the Acting Director of Procurement, plaintiffs argue that during one discussion in the summer of 1995 concerning the lack of orders for GPP, Fabrikant "dismissed Plaintiff Cason by calling him 'Nigger' and stating that he 'didn't have time to talk to him.' " Sec.Am.Cpt., ¶ 32. Fabrikant denies uttering the racial slur. *See* Fabrikant Depo., pg. 48. In any event, as previously found by this Court, this allegation alone is insufficient to establish a cause of action under either 42 U.S.C. § 1981 or § 1983. In order to constitute direct evidence of discrimination, a racial slur must be made in the course of the decisional process under challenge. *See Mauter v. Hardy Corp.*, 825 F.2d 1554, 1558 (11th Cir.1987); *Movitz v. Pratt & Whitney Co.*, Case NO. 90–8245–CIV–KING (March 26, 1992 Order Granting Motion for Summary Judgment); *see also Croy v. Skinner*, 410 F.Supp. 117, 127 (N.D.Ga.1976) (isolated racial slur fails to show type of class-based discrimination required to state claim).

In this case, plaintiffs have failed to demonstrate that the racial epithet allegedly uttered by Fabrikant was made in the context of or relating to any decision concerning the termination of plaintiffs' contracts. Indeed, the only decisional process in which Fabrikant was involved resulted in the award of the GPP contract to CEI after plaintiffs had contested the County's initial recommendation to award the contract to the second-lowest bidder, Carus Chemical Company. Sec.Am.Cpt., ¶ 24–25. If anything, Fabrikant's actions benefited plaintiffs and there is no evidence to suggest that the actions taken by Fabrikant were motivated by discrimination. Again, the award of the GPP contract to plaintiffs leads to the contrary conclusion.

#### ii. *David Ruiz*

With respect to defendant David Ruiz ("Ruiz"), the Director of Procurement for the County, plaintiffs contend that he discriminated and/or retaliated against them by chairing the PP vendor-non-performance meeting after he had been named as a defendant in this lawsuit and ultimately canceling that contract. In addition, plaintiffs point to the fact that Ruiz also conducted the "1018" vendor non-performance meeting which resulted in sanctions against CEI. Plaintiffs also accuse Ruiz of "benign neglect" for failing to question Abelin Rodriguez about an incident where he allegedly made the derogatory comment that "Cason ran a back woods operation and he wasn't a good manager." *See* Depo. of Robert Burrell at pg. 16. Similarly, plaintiffs note that Ruiz also failed to discipline Fabrikant for his use of the racial slur described above. Based on these actions by Ruiz, plaintiffs argue that the termination of the contracts was a pretext for discrimination.

The undersigned finds plaintiffs' argument to be without merit and not inconsistent with the reasons given for terminating the GPP contract. As Director of Procurement, Ruiz is responsible for monitoring vendor non-performance. When a vendor fails to perform in accordance with the terms of this contract, a vendor non-performance meeting is held during which time the vendor is given the opportunity to explain his non-performance and appropriate action is then taken. *See* Depo. of David Ruiz at pg. 169. In this

**1340**

case, plaintiffs were subjected to the vendor non-performance meeting on the GPP contract when it was unable to supply the 40,000 to 50,000 pounds of GPP in bulk as ordered by the County on December 19, 1995. Sec. Am.Cpt., ¶ 45; Exh. T. Following plaintiffs' request for a 330 day extension on the contract which required a 14–day delivery, plaintiffs were found to be in default and the contract was terminated on February 9, 1996. *Id.,* Exh. W; *See* Decl. of Robert Ready.

With respect to the pesticide and herbicide contract, a vendor non-performance meeting was conducted when the County discovered that CEI's product was leaking, was delivered late, was not the product ordered and did not have the required documentation for safe handling of chemicals. *See* Decl. of Abelin Rodriguez. The undersigned finds that these reasons constitute a legitimate non-discriminatory explanation for the sanctioning of CEI and plaintiffs' evidence of pretext is not inconsistent therewith. Ruiz's participation in these meetings and the decisions arising therefrom, without more, fail to demonstrate any discriminatory intent on his part. *See e.g., Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497, 1501 (11th Cir.1991) ("[t]he Court's role is not to sit as a super-personnel department that re-examines an entity's business decisions"); *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984) ("while an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the reason was a pretext for illegal discrimination"). Thus, viewing the evidence in the light most favorable to plaintiffs, the undersigned finds that no reasonable fact-finder could conclude that Ruiz's efforts to determine the explanation for plaintiffs' non-performance of the contracts was in any manner inconsistent with the reasons given for the termination of the GPP contract or the sanctions imposed on the 1018 contract.

Moreover, the undersigned finds plaintiffs attempt to impute racial statements made by others to Ruiz in order to show discrimination by Ruiz to be frivolous. "Because liability is premised upon intentional discrimination, personal involvement of a defendant is essential". *Boykin v. Bloomsburg Univ. of Penn.,* 893 F.Supp. 378, 394 (M.D.Pa.1995). Accordingly, plaintiffs evidence of discrimination by others cannot be used to impute liability to Ruiz.

iii. *Anthony J. Clemente*

Similarly, the undersigned finds that plaintiffs' arguments concerning defendant Anthony J. Clement ("Clemente"), Director of Metropolitan Dade County's Water & Sewer Department, fail to demonstrate that the explanation for the termination of his contract is pretextual. As evidence of discrimination, plaintiffs point out that Clemente failed to order any GPP from CEI for six months and then ordered the product from another vendor. Plaintiffs also note that Clemente required the execution of a "release" as a precondition for ordering additional PP from CEI and then threatened to retaliate against CEI. In addition, plaintiffs argue that Clemente approved an order of PP as a ploy to cancel the PP contract. Finally, plaintiffs argue that Clemente "through his inaction" condoned a racial derogatory statement made by a subordinate employee. *See* Plaintiffs' Opposing Memorandum, pg. 18.[6]

Addressing these arguments, the undersigned finds no direct evidence that any of the above described actions of Clemente were based on race. Plaintiffs have presented either conclusory allegations or allegations that have no bearing on whether the explanation for the termination of his contract was pretextual. The only evidence presented by plaintiffs which is suggestive of retaliation by Clemente is his alleged statement that "If you file the goddamn lawsuit, I'm going to starve you out. Cancel your contract and see how long you last out here." *See* Sec. Am.Cpt., 42; Cason Decl. ¶ 11. However, there is no evidence that Clemente took any action to carry out this alleged threat. Indeed, following this purported threat, Clemente authorized the order to CEI of 40,000 to 50,000 pounds of dry GPP in bulk. Sec.Am.Cpt., ¶ 45. While plaintiffs maintain that this order was only placed because the County knew it couldn't be filled,

---

**6.** The undersigned again emphasizes that plaintiffs cannot use discriminatory statements made by one individual to show discriminatory intent by another. *See Boykin, supra.*

the record is devoid of any evidence to support this contention. In addition, the complained of "release" resulted in the purchase of 10,000 gallons of the liquid solution and 10,500 pounds of dry free flowing PP in drums from CEI for a total cost of $149,-900.00. In fact, the undisputed evidence of record reflects that the County was not obligated to place any specific orders according to the terms of the contract. Section 2.33 of the bid states "No guarantee is expressed or implied as to quantities or dollars that will be used during the contract period. The County is not obligated to place an order for any given amount subsequent to the award of this bid." *See* Sec.Am.Cpt., Exh.A. Consequently, Clemente's actions, if anything, appear to have fostered plaintiffs' best interests.

In summary, after viewing the evidence in a light most favorable to plaintiffs, the undersigned finds that plaintiffs have failed to present adequate evidence that a discriminatory reason more likely motivated the individual defendants, or that these defendants' proffered explanation is unworthy of credence in order to survive the individual defendants' motion for summary judgment. Accordingly, the undersigned recommends that the individual defendants motion for summary judgment be granted.

### B. *Qualified Immunity*

As a further basis for granting summary judgment in their favor, the undersigned finds that the individual defendants are entitled to qualified immunity from this lawsuit.

▇▇ "[Q]ualified immunity protects government officials performing discretionary functions from the burdens of civil trial and from liability." *McMillian v. Johnson,* 88 F.3d 1554, 1562, *amended on other grounds,* 101 F.3d 1363 (11th Cir.1996). The Eleventh Circuit in *Foy v. Holston,* 94 F.3d 1528, 1532 (11th Cir.1996) stated:

> Once the qualified immunity defense is raised, plaintiffs bear the burden of showing that the federal rights allegedly violated were clearly established .... This burden is not easily discharged: "That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities."

> Plaintiffs cannot carry their burden of proving the law to be clearly established by stating constitutional rights in general terms.

*Id.* (quoting *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994)). Where, as here, discriminatory intent is an element of a cause of action, it is plaintiff's burden to come forward with "concrete evidence" of such intent. *See Edwards v. Wallace Community College,* 49 F.3d 1517, 1524 (11th Cir.1995)(citing *Hull v. Cuyahoga Valley Joint Vocational School Bd. of Educ.,* 926 F.2d 505 (6th Cir.1991)). Indeed, for qualified immunity to be denied, "pre-existing law must dictate, that is, truly compel ... the conclusion for every like-situated reasonable government agent that what defendant is doing violated federal law in the circumstances." *McMillian,* 88 F.3d at 1562 (quoting *Lassiter,* 28 F.3d at 1150).

▇▇ In this case, the undersigned finds that plaintiffs have failed to meet their burden. As discussed above, plaintiffs have not presented any concrete evidence of discriminatory intent on the part any one of the individual defendants. Although intent is irrelevant for a qualified immunity inquiry per se, it is relevant if intent is an element of the underlying constitutional violation. *See Edwards v. Wallace Community College,* 49 F.3d at 1524 (citations omitted). Stated otherwise, "plaintiff must present direct evidence that the officials' actions were improperly motivated by racial discrimination when the officials have asserted qualified immunity as a defense." *See Hull v. Cuyahoga Valley Bd. of Educ., supra.*

▇▇ As discussed above, plaintiffs have not presented any concrete evidence of discriminatory intent on the part any one of the individual defendants. Rather, the record established that the individual defendants possessed substantial lawful motives for acting as they did. "At least when an adequate lawful motive is present, that a discriminatory motion might also exit does not sweep qualified immunity from the field even at the summary judgment stage." *Foy v. Holston,* 94 F.3d 1528 (11th Cir.1996). Therefore, even if plaintiffs could establish mixed mo-

tives (which they have not), the individual defendants are still entitled to immunity.

Accordingly, the undersigned further recommends that summary judgment be granted in favor of the individual defendants on the basis of qualified immunity.[7]

## II. *Metropolitan Dade County's Motion for Summary Judgment*

Defendant Metropolitan Dade County ("the County") moves for summary judgment on plaintiffs' civil rights claims arguing that the undisputed facts in the record of this case support judgment in its favor. Specifically, the County argues that plaintiffs have failed to establish either that the individual defendants are final policy makers or that the County adopted any policy or custom which resulted in a violation of plaintiffs constitutional rights. In addition, the County argues that 42 U.S.C. § 1981 cannot be used to sue state actors or entities so that plaintiffs' claim thereunder fails as a matter of law.

Addressing the County's position, the undersigned first notes that in order to hold the County liable under § 1983, a plaintiff must establish (1) that the defendant[s] deprived him of a right secured by the United States Constitution or federal law; and (2) that the deprivation occurred under color of state law. *Brown v. Miller*, 631 F.2d 408 (5th Cir.1980) (citing *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978)); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Since 1978, federal law has been well established that a local governing body, such as the County, can be sued directly under § 1983 for such relief only where the action that is alleged to be unconstitutional "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Monell v. New York City Department of Social Services*, 436 U.S. 658, 689, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, a County or other local governing body cannot be held liable under § 1983 solely because it employs a tortfeasor. *Id.* at 691, 98 S.Ct. 2018. Rather, § 1983 imposes liability "on a gov-

ernment that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." *Id.* at 692, 98 S.Ct. 2018.

 Moreover, only those officials who have final policymaking authority may render the municipality liable under § 1983. *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). As explained by the Supreme Court in *Pembaur*:

[N]ot every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. *See e.g., Oklahoma City v. Tuttle*, 471 U.S. at 822–824, 105 S.Ct. 2427, 85 L.Ed.2d 791. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

*Pembaur*, 475 U.S. at 481–83, 106 S.Ct. 1292. The question of whether an official has final policymaking authority is a question of state law. *See Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Significantly, municipal liability may attach to a single decision made be a municipal official if that municipal official is the final policymaker for the municipality with respect to the subject matter in question. *See Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir.1989). Under this theory of municipal liability, the first step of the inquiry is to identify those individuals whose decisions represent the official policy of the local governmental unit with respect to the issue in question. *Id.* (citing *Jett*, 109 S.Ct. at 2723). After this determination is made, the Court proceeds to the second step of the inquiry which is to ascertain whether the challenged decision or act of the official cause

---

7. In view of this recommendation, the undersigned further recommends that plaintiffs' claim for declaratory relief (Count III) be dismissed as moot.

the deprivation of plaintiffs' constitutional rights. *Id.*

In this case, however, the undersigned already has determined that the evidence falls far short of establishing that the challenged decisions or acts of Anthony Clemente, Gary Fabrikant and David Ruiz caused any deprivation of plaintiffs' constitutional rights. Rather, the evidence establishes that these individual defendants had legitimate, non-discriminatory reasons for their action. Because no individual defendant was found to have violated any protected right of plaintiffs, the County has no municipal liability under 42 U.S.C. § 1983.

■ The undersigned further finds that there is no evidence of any unconstitutional policy of the County with respect to African–Americans in the making and enforcement of contracts, or that the County had adopted a custom of racial discrimination through a widespread practice that "although not authorized by written law or express municipal policy is 'so permanent and well settled as to constitute a custom or usage' with the force of law." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167–68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). It is undisputed that the County's Board of County Commissioners ("the Board") serves as the legislative and governing body of the County. *See* Dade County Charter § 1.01A; County's Motion for Summary Judgment, Exh. A. It is also undisputed that the Board created and adopted a Black Business Enterprises ("BBE") program in 1992 to foster previous established "race—conscious measures designed to promote increased participation of Black-owned businesses in County construction contracts and County purchases of goods and services." *See* Ordinance 92–45, County's Motion for Summary Judgment, Exh. 4. In addition, County Administrative Order 3.2 (July 13, 1993) states:

> When purchasing commodities and services, the County not only attempts to follow sound and prudent business practices, but also seeks to promote full and equitable economic participation by all segments of the community. With this objective in mind, a special effort shall be made

to obtain these items from Blacks and other minorities.

*Id.* Therefore, it appears that the policy of the County is to promote, rather than impede, the purchase of goods and services from AfricanAmerican businesses.

While not challenging the validity of the foregoing formal policies, plaintiffs argue that the County adopted a custom of racial discrimination through various policymaking county officials who "combined to create an official County policy of illegal retaliation against plaintiffs based on racial motivations." *See* Plaintiffs' Opposing Memorandum, pg. 21. In plaintiff's view, evidence of this retaliatory policy is established primarily by initially awarding the GPP contract to another vendor (although plaintiffs were ultimately awarded the contract), ordering minuscule amounts of the product, and a derogatory statement made by Rodriguez, an individual who is not even a party to this case. These incidents, however, fail to constitute a custom or policy of retaliation "so permanent and well settled ... with the force of law." *See City of St. Louis v. Praprotnik, supra. See e.g., Hamilton v. Rodgers,* 791 F.2d 439, 443 (5th Cir.1986) (holding that a dozen racial incidents over a two and one half year period were too few to constitute a custom with the force of law). Moreover, plaintiffs fail to present any evidence even suggesting that such alleged acts of retaliation happened to others. Accordingly, the undersigned finds that plaintiffs have failed to establish that the County has an unconstitutional policy or custom concerning African–Americans.

■ Having concluded that the County has no municipal liability under 42 U.S.C. § 1983 because no individual defendant was found to have violated any protected right of plaintiffs, the undersigned finds it unnecessary to address in detail whether these individual defendants were policymaking officials of the County. Briefly stated, the undersigned finds that Anthony J. Clemente, Director of MDWSD; David Ruiz, Director of Procurement; and Gary Fabricant, the Assistant Director of Procurement are not final policymakers regarding purchases for the County. While the evidence reflects that

these individuals do have discretionary authority over certain matters within the departments they administer, the evidence also demonstrates that their decisions are constrained by official policies and are subject to review. *See Mandel v. Doe*, 888 F.2d 783, 792 (11th Cir.1989) (In order to have policymaking authority, "the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review."). Specifically, the Board of County Commissioners ("the Board") serves as the legislative and governing body of the County. *See* Dade County Charter § 1.01 A; County's Motion for Summary Judgment, Exh. 1. The County's Charter designates the County Manager as the County's chief executive officer and assigns him responsibility "for the administration of all units of County government" and "for carrying out the policies adopted by the Board". *Id.*, §§ 3.01, 3.04. However, the Board may modify any of the Manager's orders, rules or regulations. *Id.*, § 4.02. The Mayor serves as the head of the County government and has veto authority over certain decisions of the Board. *Id.*, § 1.10. Contracts for purchases of supplies are "evidenced by written contract submitted and approved by the Board." *Id.*, § 4.03(D). The County Manager may award certain contracts but his authority is granted by administrative order and is subject to Board approval. *See* Dade County Code § 2–8.1(b)(c). The Procurement Division of the General Service Administration ("GSA") of the County is responsible for the purchase of goods and services, but the decisions of its director are subject to review by the Director of GSA and the County Manager. *See* Administrative Order 3–2.

In view of this hierarchy, the undersigned concludes that the individual defendants in their capacities as department directors are not final policymakers because their decisions are subject to review by the County Manager and the Board. This conclusion is supported by the Eleventh Circuit and other courts within this district which have addressed similar issues. *See Manor Health-*

*care Corp. v. Lomelo*, 929 F.2d 633 (11th Cir.1991) (City not held liable for the acts of its mayor because his decisions were subject to review by the City Council); *Lawrence v. Metro Dade County*, 872 F.Supp. 957 (S.D.Fla.1994) (holding that Director of the Police Department is not a final policymaking official because his decisions are constrained by the County Manager, the Board and administrative order and polices). Accordingly, the undersigned finds no basis to impose municipal liability under § 1983 against the County herein.[8]

■ As a further basis for dismissal of plaintiffs' § 1981 claim, the County correctly notes that the remedy provided by § 1983 for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," provides the exclusive federal remedy for violations of the rights guaranteed by § 1981 when the claim is pressed against a state actor or entity. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). Thus, the only means for plaintiffs to seek redress from the County for its alleged violation of plaintiffs' § 1981 rights such as the right to "make and enforce contracts" is to maintain an action under § 1983. *See Johnson v. City of Fort Lauderdale, Fla.*, 903 F.Supp. 1520 (S.D.Fla. 1995). Therefore, in order to establish liability on the County here for the alleged acts of its officers/employees, plaintiffs must show that the violation of his right to make and enforce contracts was "officially sanctioned or ordered" by the County. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986); *Monell*, 436 U.S. at 691, 98 S.Ct. 2018 (custom must be so permanent and well settled as to have the force of law).

For the reasons stated above, the undersigned finds that plaintiffs have failed to demonstrate that they were deprived of any constitutional right through an official custom or policy adopted by the County, or that any County official with policymaking authority caused the deprivation of plaintiffs' rights.

---

8. In so finding, the undersigned has considered and rejected plaintiff's theory that the County is still liable because the Board, through its inaction, failed to stop the alleged retaliation. Again the undersigned finds no competent evidence of any retaliation or that Board approved any policy of retaliation or discrimination.

Accordingly, the undersigned recommends the entry of summary judgment in favor of the County on plaintiffs' § 1981 claim.

### III. State Law Claims

Having found that plaintiffs' federal civil rights claims under 42 U.S.C. §§ 1981 and 1983 cannot survive defendants' motions for summary judgment, the undersigned further recommends that this Court dismiss plaintiff's pendent state law claims (Counts IV & V) at this time. See Rice v. Branigar Organization, 922 F.2d 788 (11th Cir.1991) (When a district court dismisses all of the federal claims before trial, the decision whether or not to exercise pendent jurisdiction over state law claims is within its discretion).

### RECOMMENDATION

In summary, the undersigned finds that plaintiffs have failed to submit evidence sufficient to defeat defendants' motions for summary judgment. Based on the foregoing, the undersigned respectfully recommends:

(a) that Defendant Metropolitan Dade County's Motion for Summary Judgment be GRANTED; and

(b) that the Individual Defendant's Motion for Summary Judgment be GRANTED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable Donald L. Graham, United States District Judge, within ten (10) days of receipt. See 28 U.S.C. § 636(b)(1)(c); United States v. Warren, 687 F.2d 347 (11th Cir.1982); cert. denied, 460 U.S. 1087, 103 S.Ct. 1781, 76 L.Ed.2d 351 (1983); Hardin v. Wainwright, 678 F.2d 589 (5th Cir. Unit B 1982); see also Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).