**Hirame ST. HILAIRE and Jenise Selby, Plaintiffs,**

v.

**THE PEP BOYS—MANNY, MOE AND JACK, a Pennsylvania corporation, Val Santos, Chris Hubacher, Ken Racik and Frank Romano, Defendants.**

**No. 97–6910–CIV–GOLD/SIM.**

United States District Court,
S.D. Florida,
Miami Division.

Sept. 2, 1999.

Saul Smolar, Fort Lauderdale, FL, for plaintiffs.

Mark E. Zelek, Devand A. Sukhdeo, Morgan, Lewis & Bockius, Miami, FL, for defendants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

GOLD, District Judge.

THIS CAUSE is before the Court upon Defendants' Motion for Summary Judgment Against Plaintiff Hirame St. Hilaire [D.E. # 46], and Defendants' Motion to Sever the Claims of Plaintiffs Hirame St. Hilaire and Jenise Selby, and to Proceed With Separate Actions, or in the Alternative, for Separate Trials [D.E. # 51]. Plaintiff, Hirame St. Hilaire, ("St.Hilaire"), filed this lawsuit against his former employer, the Pep Boys—Manny, Moe and Jack, alleging that they violated Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) (hereafter Title VII); 42 U.S.C. § 1981 (hereafter § 1981); The Florida Civil Rights Act of 1992, (Fla.Stat. § 760.01 *et seq.*) (hereafter FCRA); and the Florida Whistle Blower Act (Fla.Stat. § 448.101 *et seq.*) (hereafter Whistle Blower Act), by 1) failing to promote him due to racial discrimination; 2) treating him differently than other employees based on his race; 3) retaliating against him due to his participation in protected activities; and 4) subjecting him to a racially hostile work environment. St. Hilaire's § 1981 claims are also apparently directed against individual Defendants Val Santos and Chris Hubacher.[1] Defendants contend that they are entitled to summary judgment on all claims because St. Hilaire has not presented evidence to meet his burden to present a prima facie case on any of the issues he has raised, and because St. Hilaire has not properly invoked the Whistle Blower Act.

Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1331 for claims arising under federal law, and pursuant to 28 U.S.C. § 1367 for claims under state law. After careful consideration of the parties' arguments, the relevant case law, and the record as a whole, this Court concludes that Defendants' Motion for Summary Judgment against St. Hilaire should be granted as to the Title VII, § 1981, and FCRA claims, and that St. Hilaire's cause of action pursuant to the Whistle Blower Act should be remanded to state court. This Court further concludes that Defendants' Motion to Sever the Claims of Plaintiffs Hirame St. Hilaire and Jenise Selby, And To Proceed With Separate Actions, Or In The Alternative For Separate Trials, should be denied as moot due to the granting of Defendants' Summary Judgment Motion against St. Hilaire and the remand of his Whistle Blower Act claim to state court.

### I. Factual and Procedural Background

St. Hilaire's claims arise out of his employment with Defendant Pep Boys as a sales person at the Lauderdale Lakes store. The present action was initiated by filing a four-count Complaint on July 28, 1997. An amended, four-count Complaint was filed on November 12, 1997.[2] Count I alleges failure to promote, disparate treatment, racially hostile environment, and retaliation for filing a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC"), in violation of Title VII. Counts II and III set forth the same claims, in violation of the FCRA and § 1981.[3] Count IV alleges retaliation for filing charges with the EEOC, the National Association for the Advancement of Colored People (the "NAACP"), and the Florida Commission on Human Rights (the

---

1. St. Hilaire does not raise any claim against individual Defendants Ken Racik and Frank Romano.

2. Plaintiffs Witter and Ramos were dismissed from the case with prejudice (D.E.# 35).

3. Plaintiff Selby's claim arises only under Count III, alleging a violation of § 1981.

"FCHR"), in violation of the Whistle Blower Act. In support of his claims, St. Hilaire alleges that: 1) Pep Boys refused to investigate a purportedly fraudulent evaluation of him, drafted in part by two white supervisors, Defendants Santos and Hubacher, with St. Hilaire's forged signature on it; 2) Pep Boys refused to promote him to positions for which he was qualified because of this negative evaluation in his file; 3) three months after he filed an EEOC complaint, an assistant manager denigrated him and sent him home without pay for a day for coming to work forty minutes late when no other employee was treated similarly for like conduct; and 4) thirteen months after he filed an EEOC complaint, and about one month after his complaint was dismissed, he was told that he would have to become a part-time worker if he wanted to have Sundays off, unlike other full-time employees who were permitted to have Sundays off.

On November 22, 1994, Pep Boys hired St. Hilaire as a part-time sales person in Store 165 in Pompano Beach (St. Hilaire deposition at 65–66, 106–07, hereafter referred to as Depo.). In February 1995, St. Hilaire transferred to Store 189 in Lauderdale Lakes, where he continued as a part-time sales person (Depo. at 67).

In 1995, assistant store manager Patrick Lafaille, an African–American male, told St. Hilaire that there was a tire specialist position available and suggested he apply for it (Depo. at 29, 144, 168). St. Hilaire prepared a resume and submitted it to then-store manager, Defendant Val Santos (Depo. at 28–29). The job was given to Conrad Jarrett, an African–American male (Depo. at 29–31, 169, 170). St. Hilaire did not know Jarrett's qualifications for the position (Depo. at 30).

St. Hilaire failed to be promoted to the jobs of assistant parts manager and parts manager at the Lauderdale Lakes store, and as parts manager at the Pompano Beach location (Depo. at 170–71). St. Hilaire never applied for these promotions (Depo. at 129). Although these positions were not posted, he learned about them through word of mouth (Depo. at 129, 171–72, 177). St. Hilaire told Lafaille and Santos that he was interested in a promotion (Depo. at 129).

St. Hilaire believed he was qualified for the above positions, as he felt he had management skills, but admitted that he did not know what the qualifications were for the positions (Depo. at 171–72). St. Hilaire did not remember who got the parts manager job in Pompano Beach. Nor did he know the person's qualifications (Depo. at 173). He did not remember when the assistant parts manager position was open in Lauderdale Lakes, who got the job, or the qualifications of the person who got the job (Depo. at 173–74). St. Hilaire also could not remember when the parts manager job was open in Lauderdale Lakes, and could not remember who got the job, but knew the person had been working there only a short time and thought he had been a manager at another auto parts store (Depo. at 176–77). Charles Allen, the South Florida District Manager for Pep Boys, stated that the individuals who filled the positions of Tire Specialist, Assistant Parts Manager and Parts Manager in the Lauderdale Lakes store, and Parts Manager in the Pompano Beach Store were more qualified for those positions than St. Hilaire (Declaration of Allen, attached to Defendants' Motion for Summary Judgment).

In January 1996, St. Hilaire asked store manager Michael Dorfman for a full-time sales position. The request was granted (Depo. at 68).

St. Hilaire testified that in March 1996, St. John Mumford, another Pep Boys employee working in the Pompano Beach store told him that the position of Parts Manager was open at the Pompano Beach store. Mumford also said he had spoken to the store manager about St. Hilaire getting the job and that the manager told Mumford that there was something in St. Hilaire's file which was keeping St. Hilaire

from getting the position (Depo. at 14–16, 171–72).

Soon thereafter, St. Hilaire was permitted to see his personnel file upon request (Depo. at 86–88). St. Hilaire testified that it was then that he first saw what was purported to be his March 1995 performance evaluation (Depo at 83, 86). However, St. Hilaire claims that he was not evaluated in 1995 (Depo at 83–84). Moreover, St. Hilaire contends he told Dorfman that his signature on the performance evaluation was a forgery (Depo. at 84, 112–13, 210). St. Hilaire claimed to recognize the handwriting of two of his supervisors, Defendants Hubacher and Santos, on the document (Depo. at 84–85).

Although never told, St. Hilaire believed that the 1995 evaluation foreclosed his promotional opportunities and raises (Depo. at 115–16, 169, 212–13). He believed that the managers went to his personnel file to see if he was competent, but admitted that he did not know how the company decided personnel promotions and did not know if the store manager had looked at his personnel file before making the decision (Depo. at 116, 169). He had never heard of another employee with a forged signature on their evaluation, but he did not review other employees' evaluations (Depo. at 177–78, 182).

St. Hilaire then asked Dorfman for a copy of his personnel file. Dorfman initially agreed. Two hours later, Dorfman told him that, pursuant to company policy, he would have to request his file in writing (Depo. at 87, 112). Dorfman assisted St. Hilaire in writing the letter, which was dated March 26, 1996 (Depo. at 87). St. Hilaire then went to the Fort Lauderdale chapter of the NAACP and spoke to the Chapter President about the release of his file and its allegedly disturbing contents (Depo. at 89). On March 28, 1996, St. Hilaire, assisted by the NAACP, wrote a letter to the President of Pep Boys requesting his personnel file (Depo. at 89–91). St. Hilaire received his file by mail in early April 1996 (Depo. at 88, 91). St. Hilaire said he did not know if he would have received his personnel file if the NAACP had not helped him (Depo. at 92–93).

Ursula Ballard from Pep Boys' Human Resources subsequently called St. Hilaire at the store. St. Hilaire told her that the 1995 evaluation in his file was fraudulent, that his signature was forged, and that he had not been evaluated in 1995. (Depo. at 112–14, 211). Ballard called back St. Hilaire. She said that she had spoken to Santos over the phone and that Santos claimed that he had reviewed the evaluation with St. Hilaire and that St. Hilaire had signed it at that time. Ballard said that it was St. Hilaire's word against Santos' (Depo. at 114). Ballard offered to "do him a favor" and remove the 1995 evaluation, but St. Hilaire did not want her to do so (Depo. at 116–17, 179–80, 184–85).

St. Hilaire next tried to call company Vice President Warren Page, leaving a message, but did not receive a return call (Depo. at 117–18). St. Hilaire spoke to District Manager Allen, who had spoken to Santos (Depo. at 119, 210–11). Allen told St. Hilaire that he would only remove the 1995 evaluation from his personnel file if someone admitted to forging St. Hilaire's signature (Depo. at 121).

Rather than pursuing the matter further with Pep Boys, St. Hilaire went to the NAACP, which handled the matter on his behalf (Depo. at 115). On May 8, 1996, St. Hilaire filed a Charge of Discrimination with the EEOC (Depo. at 167–68).

On August 9, 1996, St. Hilaire was scheduled to begin work at 2:30 p.m. At 2:15 p.m., he called Lafaille and told him that he would be in one half-hour late. St. Hilaire actually reported at work at 3:10 p.m. (Depo. at 143–44). After a heated confrontation between Lafaille and St. Hilaire, in which St. Hilaire was belittled, St. Hilaire was sent home without pay for insubordination (Depo. at 143–47). St. Hilaire said he felt physically threatened and humiliated (Depo. at 161–62).

St. Hilaire did not know if Lafaille was personally aware of the charge of discrimination St. Hilaire had filed with the EEOC, but believed that the charge had gone through the corporate office and that Lafaille, as a manager, should have been aware of it (Depo. at 144–45). He also did not know if Lafaille was personally aware that St. Hilaire had gone to the NAACP (Depo. at 145). He believed that the incident with Lafaille was the result of the initial complaint to the EEOC, and was not racially motivated. St. Hilaire stated that after he filed the complaint, the attitudes of many of his co-workers changed towards him (Depo. at 165–66). St. Hilaire never complained to anyone at Pep Boys about the August 9, 1996 incident (Depo. at 167). On August 15, 1996, St. Hilaire filed another Charge of Discrimination with the EEOC relating to the August 9, 1996 incident (Depo. at 138).

St. Hilaire said that his position on the job did not change as a result of the August 9, 1996 incident (Depo. at 149–50). He continued to work in sales. He testified that he never saw anyone else sent home without pay for coming in late and never witnessed any heated conversations between other employees (Depo. at 151).

St. Hilaire received his EEOC Dismissal and Notice of Rights sometime after April 29, 1997 (Depo. at 159–60).

Beginning in June 1997, St. Hilaire started working part-time in order to have Sundays off to attend church, which option, he was told, was only available to part-time employees (Depo. at 69–70, 106–07, 153). Although St. Hilaire claimed other full-time employees could take off any day they chose, he named only Renee Van-Wick, a customer service employee (Depo. at 152, 154). He identified no other employee disparately treated regarding the issue of Sunday leave (Depo. at 157–59). Lauderdale Lakes Store Manager Dorfman stated that, unlike St. Hilaire, Ms. VanWick was not needed to work on Sundays, because other Customer Service employees wanted to work on Sundays and because there was no need for additional Customer Service personnel on Sundays (Declaration of Dorfman, attached to Defendants' Motion for Summary Judgment).

St. Hilaire resigned his position with Pep Boys on March 4, 1998, nine days after he had begun another, full-time job (Depo. at 195, 196–98).

## II. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure authorizes entry of summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is properly regarded not as a disfavored procedural shortcut but, rather, as an integral part of the federal rules as a whole, which are designed to secure a just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). The moving party has the burden to establish the absence of a genuine issue as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d at 646. Once the moving party has established that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law, the burden shifts to the non-movant to come forward with a response setting forth "specific facts" showing that there is a genuine issue for trial. Thus, the party opposing summary judgment may not rest upon the mere allegations or denials of the pleadings, but must present sufficient evidence favoring

the non-moving party for a jury to return a verdict in favor of that party. *See Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. Conclusory allegations will not suffice to create a genuine issue. There must be more than a scintilla of evidence; there must be "substantial conflict in evidence to support a jury question." *Tidwell v. Carter Prods.,* 135 F.3d 1422, 1425 (11th Cir. 1998) (quoting *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989)). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Allen v. Tyson Foods,* 121 F.3d at 646.

### III. Discussion and Analysis

#### A. Introduction

■ Title VII prohibits private employers from basing decisions to hire, discharge, and promote employees on race, gender, or national origin. *See* 42 U.S.C. § 2000e–2(a)(1). The Supreme Court has held that Title VII is intended to eradicate not only economic and tangible discrimination, but the entire spectrum of disparate treatment, which includes requiring people to work in a racially hostile or abusive environment. *See Meritor Savings Bank v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). However, not all employment practices are actionable under Title VII. *See Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir. 1985) ("the employment discrimination laws ... cannot be transformed into a palliative for every workplace grievance, real or imagined ..."). Thus, Title VII and § 1981 are not shields against harsh treatment in the workplace. Nor do these statutes require the employer to have good cause for its decisions. *See Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984).

■ In an employment discrimination case, the plaintiff bears the ultimate burden of proving that the defendant intentionally discriminated against the plaintiff. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089,

1093–94, 67 L.Ed.2d 207 (1981). Because direct evidence of discrimination can be difficult to produce, the Supreme Court, in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), created a framework on the burden of production and order of presentation of proof to analyze circumstantial evidence of discrimination. Where, as here, there is no direct evidence of racial discrimination, "the plaintiff must produce sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion." *Williams v. Vitro Servs. Corp.,* 144 F.3d 1438, 1441 (11th Cir.1998). Under *McDonnell Douglas,* if the plaintiff creates an inference of discrimination by establishing a prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action, and if it does, the defendant is entitled to summary judgment unless the plaintiff persuades the trier of fact that the defendant intentionally discriminated against the employee despite the defendant's proffered lawful reason for its employment decision. *See Walker v. Mortham,* 158 F.3d 1177, 1193 (11th Cir.1998), *petition for cert. filed,* —— U.S. ——, 120 S.Ct. 39, 145 L.Ed.2d 36 (1999) (No. 98–1599). To satisfy this burden, the defendant need only produce evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus. *See Burdine,* 450 U.S. at 257, 101 S.Ct. at 1096.

■ The legal standards which govern St. Hilaire's Title VII claims also govern his claims under the FCRA and § 1981, which arise out of the same facts. *See Vincent v. Wells Fargo Guard Services, Inc. of Fla.,* 3 F.Supp.2d 1405, 1413 (S.D.Fla.1998) ("The test for intentional discrimination in suits under § 1981 is the same as the formulation used in Title VII discriminatory treatment cases"); *Gray v. Russell Corp.,* 681 So.2d 310, 312 (Fla. 1st DCA 1996) (applying *McDonnell Douglas*

standard to FCRA claims). If St. Hilaire is able to establish a prima facie case, however, Pep Boys must then articulate a legitimate, non-discriminatory reason for the employment action taken. *See Meeks v. Computer Associates Int'l,* 15 F.3d 1013, 1021 (11th Cir.1994). Once Pep Boys articulates legitimate, non-discriminatory reasons, St. Hilaire must then prove that Pep Boys' proffered explanation is a pretext for unlawful discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515–17, 113 S.Ct. 2742, 2751–52, 125 L.Ed.2d 407 (1993). St. Hilaire's mere belief, speculation, or conclusory accusation that he was subject to discrimination will not suffice to create an inference of discrimination or satisfy his burden when responding to a properly supported motion for summary judgment. *See Coutu v. Martin County Bd. of County Comm'rs,* 47 F.3d 1068, 1073–74 (11th Cir.1995).

### B. The Failure to Promote Claim

St. Hilaire's claim that Pep Boys improperly failed to promote him due to his race is based upon the allegedly fraudulent evaluation in his personnel file, which he found after the subject positions had been filled. Defendants argue that the record contains no evidence that: 1) the persons hired for these positions were not also African–Americans; 2) St. Hilaire was as qualified or more qualified for these positions than the persons hired; and 3) the evaluation was ever considered in making the hiring decision. The Court agrees with Defendants' assessment.

### 1. Prima Facie Case

To establish a prima facie case of discrimination based on failure to promote, St. Hilaire must prove by a preponderance of the evidence that: 1) he is a member of a protected group; 2) he applied for an available position; 3) for which he was qualified; 4) he was rejected despite his qualifications; and 5) the position remained open or was filled by someone outside his protected group. *See Walker,* 158 F.3d at 1182.

As a threshold matter, St. Hilaire cannot establish that any of the four positions was filled by someone outside his protected group. The tire specialist position at the Lauderdale Lakes store was filled by Conrad Jarret, who, like St. Hilaire, is an African–American male. St. Hilaire cannot identify when the other three positions—a parts manager at the Pompano Beach store, and an assistant parts manager and a parts manager at the Lauderdale Lakes store—were open or who filled them. St. Hilaire testified that he did not know who received these positions (Depo. at 173, 176–77). St. Hilaire's conclusory assertion that three of these positions were given to white applicants is without support in the record (Opposition to Defendants' Motion for Summary Judgment, at 2, 5). Therefore, St. Hilaire cannot make out a prima facie case of promotion discrimination.

### 2. Legitimate, Non–Discriminatory Reason Not to Promote

Even if St. Hilaire had been able to make out a prima facie case of promotion discrimination, Pep Boys has rebutted the presumption by articulating a legitimate, non-discriminatory reason for not promoting St. Hilaire. *See Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. The record contains the unrebutted declaration of District Manager Charles Allen that all the individuals who filled these positions were more qualified than St. Hilaire. This is a legitimate, non-discriminatory reason for St. Hilaire's non-selection.

### 3. Pretext

Once Pep Boys articulates a legitimate, non-discriminatory reason for its action, the initial inference of discrimination "drops" from the case. *See St. Mary's Honor Ctr.,* 509 U.S. at 510–11, 113 S.Ct. at 2749. The burden then shifts back to St. Hilaire to discredit Pep Boys' proffered explanation for its decision and to show that the actual basis for its employment decision was racial animus. *See*

*Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. St. Hilaire may avoid summary judgment and show pretext directly by persuading this Court that a discriminatory reason more likely motivated Pep Boys, or indirectly by showing that Pep Boys' proffered explanation is unworthy of credence. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997), *cert. denied,* 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998). If Pep Boys' articulated reasons are then found to be pretextual, leaving no valid reason for Pep Boys' actions, it is likely that discrimination was the true reason. *See United States Postal Serv. Bd. v. Aikens,* 460 U.S. 711, 715–16, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983). St. Hilaire, therefore, has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by Pep Boys were not the real reasons for the failure to promote. *See McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *Combs,* 106 F.3d at 1528.

■ St. Hilaire, however, has failed to present evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of Pep Boys' legitimate, nondiscriminatory reason for not promoting him. *See Evans v. McClain of Georgia, Inc.,* 131 F.3d 957, 964–65 (11th Cir. 1997). Just because St. Hilaire *believes* he was not promoted due to his race does not establish that his failure to attain the desired promotion was racially motivated. In other words, St. Hilaire's mere belief, speculation, or conclusion that he was subject to discrimination does not create an inference of discrimination or satisfy his burden. *See Coutu,* 47 F.3d at 1074. It is the perception of the decision maker which is relevant to this Court's determination,

not St. Hilaire's perception of himself. *See Webb v. R & B Holding Co., Inc.,* 992 F.Supp. 1382, 1387 (S.D.Fla.1998) (citing *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980)).

St. Hilaire admits that he does not know if the 1995 evaluation held him back from any promotions (Depo. at 116). St. Hilaire's deposition testimony that co-worker St. John Mumford told him in March 1996 that an unidentified person had told Mumford that there was something in St. Hilaire's file which held him back from being promoted to the parts manager position at the Pompano Beach store (Depo. at 14–15, 171–72), is not probative evidence on this issue. St. Hilaire's testimony is inadmissable double hearsay and the alleged declarant is unidentified. The lack of any indication that this statement could be reduced to admissible evidence at a trial discounts its probative value for purposes of this motion. *See Evans,* 131 F.3d at 962 (citation omitted).

Moreover, while St. Hilaire was not required, as part of his prima facie case, to establish that he was equally as qualified or more qualified than the individuals who received the promotions, he must address relative qualifications now that Pep Boys has presented them to rebut his presumption of discrimination. *See Walker,* 158 F.3d at 1190. St. Hilaire has provided no evidence that this relative qualification rebuttal is a pretext for discrimination and, therefore, his failure to promote claim must be dismissed.[4] Indeed, St. Hilaire admitted in his deposition that he did not know the qualifications of the individuals hired for the three positions (Depo at 173–74).[5] Because St. Hilaire has not presented significantly probative evidence to meet his burden to establish pretext, he cannot avoid summary judgment. *See Young v.*

---

4. The only record evidence of St. Hilaire's qualifications is his testimony that he was an assistant parts manager at Rose Auto Store before he worked at Pep Boys (Depo. at 42, 177), and that he thought he was qualified because he feels he has management skills (Depo. at 172).

5. St. Hilaire testified that he thought the person who got the parts manager job at the Lauderdale Lakes store had been a manager at another auto parts store, but could not remember his name (Depo. at 176–77).

*General Foods Corp.*, 840 F.2d 825, 829 (11th Cir.1988).

### C. Disparate Treatment Claims

St. Hilaire claims that Pep Boys improperly treated him differently than other employees due to his race because: 1) the 1995 employee evaluation he found in his file in 1996 was fraudulent and contained his forged signature and that no white employee had a similar false evaluation placed in his or her file; and 2) he had to change to part-time status when he wanted Sundays off, even though a white co-worker was scheduled off on Sundays while remaining a full-time employee. St. Hilaire also raises a claim that he was subjected to disparate treatment because Pep Boys did not follow its own policy regarding terminating individuals like Santos and Hubacher who engaged in dishonest conduct such as forging documents or being involved in the preparation of forged documents. Defendants argue that the record contains no evidence that: 1) other employees did not have a fraudulent evaluation placed in their personnel files; 2) the fraudulent evaluation adversely affected the conditions of St. Hilaire's employment; and 3) the white co-worker who worked full-time and had Sundays off was similarly situated to St. Hilaire. Defendants also submit that St. Hilaire was not subject to any adverse employment action for forging documents or being involved in the preparation of forged documents, so he cannot establish a prima facie case on this ground. The Court agrees with Defendants' position.

### 1. Prima Facie case

■ To establish a prima facie case of disparate treatment racial discrimination under Title VII, St. Hilaire must show that 1) he belongs to a racial minority; 2) he was subjected to an adverse job action; 3) Pep Boys treated similarly situated employees outside his classification more favorably; and 4) he was qualified to do the job. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir.1997).

■ Pep Boys argues that St. Hilaire cannot establish a prima facie case of unlawful race discrimination under a disparate treatment theory because he cannot offer evidence of a similarly situated and similarly mistreated employee, and he has shown no evidence of racial bias on the part of Pep Boys. For purposes of summary judgment, the parties apparently agree that St. Hilaire is a member of a protected class, that he suffered an adverse job action, and that he was qualified to do his job. The first focus of disagreement concerns the "similarly situated" element. Pep Boys argues that St. Hilaire cannot show that there were similarly situated employees outside the protected group who were treated differently than he was.

To establish a prima facie case, St. Hilaire must show that there were employees, not within his protected class, who were similarly situated in all relevant respects, but who were treated more favorably. *See Walker*, 158 F.3d at 1193; *Holifield*, 115 F.3d at 1561. In determining whether employees were similarly situated and more favorably treated, this Court must consider whether the employees were treated in the same way as St. Hilaire. The adequacy of the comparators is crucial. *See Marshall v. Western Grain Co., Inc.*, 838 F.2d 1165, 1168 (11th Cir. 1988). Here, St. Hilaire has not shown that there were similarly-situated employees who were treated differently than he was. If St. Hilaire cannot show there was a similarly situated employee, "summary judgment is appropriate where no other evidence of discrimination is present." *Holifield*, 115 F.3d at 1562.

St. Hilaire apparently asserts § 1981 disparate treatment discrimination claims against individual Defendants Santos and Hubacher based on the allegedly forged signature on his 1995 performance evaluation. St. Hilaire must also prove that Santos and Hubacher personally participated in the discriminatory conduct because their liability under § 1981 is premised on inten-

tional discrimination. *See Cason Enterprises, Inc. v. Metropolitan Dade County,* 20 F.Supp.2d 1331, 1337 (S.D.Fla.1998).[6]

### 2. The 1995 Evaluation

■ St. Hilaire claims that he suffered discrimination because someone forged his signature on his 1995 evaluation. However, St. Hilaire testified at his deposition that he does not know whether any other employee at Pep Boys received an evaluation with a forged signature (Depo. at 177–78, 182). Thus, he cannot prove the similarly situated prong of his prima facie case.

The only evidence which St. Hilaire provides on this issue is contained in ¶ 6 of his affidavit, attached to his Response to Defendant's Motion for Summary Judgment in which he states: "During my employment with Pep Boys, no White employee of Pep Boys ever had a forged Performance Appraisal put in his/her personnel file." This directly contradicts his deposition testimony that he did not know if any other employees received an evaluation with a false signature. St. Hilaire cannot use his affidavit to manufacture an issue of material fact which is contradicted by his deposition testimony and where he does not explain the contradiction. *See Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.,* 736 F.2d 656, 657 (11th Cir. 1984); *accord Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 119 S.Ct. 1597, 1603–04, 143 L.Ed.2d 966 (1999). Thus, St. Hilaire's statement in the affidavit will not be credited.

St. Hilaire also cannot show that he suffered any unlawful employment practice due to the 1995 evaluation. St. Hilaire stated that he did not know if the 1995 evaluation held him back from receiving a promotion. He has offered no evidence that the 1995 evaluation had any effect on the conditions of his employment. Indeed, St. Hilaire does not dispute that Pep Boys offered to remove the evaluation from his personnel file when he objected that it was fraudulent. Thus, St. Hilaire has not proven that he has suffered any unlawful employment practice within the meaning of Title VII.

### 3. Working Full–Time and Taking Sundays Off

■ St. Hilaire also cannot prove the similarly situated prong in reference to his request for Sundays off. Ms. VanWick is the only employee identified by St. Hilaire identified who worked full-time and had Sundays off (Depo. at 154, 157–59). St. Hilaire testified that VanWick did not have the same duties or position that he had. St. Hilaire worked in sales and VanWick worked in customer service (Depo. at 151, 154). Moreover, Michael Dorfman, the store manager stated that, unlike St. Hilaire, VanWick was not needed to work Sundays, because other Customer Services employees wanted to work on that day and there was no need for additional employees in that department. Therefore, St. Hilaire cannot establish the similarly situated prong of his prima facie case, as he cannot show that VanWick or any other employee was similarly situated to him in all relevant respects. *See Holifield,* 115 F.3d at 1562.

### 4. Pep Boys Did Not Follow Its Own Policies Regarding Terminating Other Individuals Who Engaged in Dishonest Conduct

St. Hilaire provides no legal support for his claim that he was subjected to disparate treatment because Pep Boys did not follow its own policy regarding terminating individuals like Santos and Hubacher who engage in dishonest conduct such as forging documents or being involved in the preparation of forged documents. (St. Hilaire's Response to Defendants' Motion for Summary Judgment, at 12). Moreover, because St. Hilaire was not subject to any adverse employment action for forging

---

**6.** St. Hilaire testified that he recognized the handwriting of Defendants Santos and Hubacher on the allegedly fraudulent 1995 evaluation, and believed that one of them had forged his signature on the evaluation (Depo. at 85, 120, 182–83).

documents or being involved in the preparation of forged documents, he cannot show that he was the subject of an adverse employment action or that he was treated less favorably than similarly situated employees who were not African–American. Consequently, this Court finds that St. Hilaire has not established a prima facie case of disparate treatment based on racial discrimination, because he has failed to establish the "similarly-situated" prong of the *McDonnell Douglas* test.

### D. Retaliation Claim

St. Hilaire further alleges that he was retaliated against for filing a complaint with the EEOC by: 1) being yelled at and sent home for one day without pay on August 9, 1996 for arriving at work forty minutes late; and 2) having to change to part-time status when he wanted Sundays off while a white co-worker was allowed to have Sundays off while working full-time. Defendants state that St. Hilaire has not shown that the persons who allegedly retaliated against him actually knew of his EEOC complaint. The Court agrees.

■■■■ To establish a Title VII claim for retaliation, St. Hilaire must show that: 1) he engaged in a statutorily protected activity; 2) an adverse employment action occurred; and 3) the adverse action was causally related to St. Hilaire's protected activities. *See Little v. United Technologies*, 103 F.3d 956 (11th Cir.1997); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993). To satisfy the causal connection requirement, St. Hilaire must establish that the supervisors were actually aware of the protected expression at the time they allegedly took the adverse employment action against St. Hilaire. *See Goldsmith*, 996 F.2d at 1163. Once St. Hilaire establishes a prima facie case, Pep Boys must proffer a legitimate, non-discriminatory reason for the adverse employment action. *See EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571–72 (11th Cir.1993). If Pep Boys offers legitimate reasons for the employment action, St. Hilaire must then demonstrate that Pep Boys' proffered explanation is a pre-

text for retaliation. *See Meeks*, 15 F.3d at 1021; *Goldsmith*, 996 F.2d at 1163.

### 1. The August 9, 1996 Incident

■■■■ On August 15, 1996, St. Hilaire filed a supplementary charge of discrimination with the EEOC, alleging that Lafaille had retaliated against him by sending him home as a result of the August 9, 1996 incident. St. Hilaire alleged that Lafaille had retaliated against him because St. Hilaire had filed a charge of discrimination with the EEOC and had complained to the NAACP. However, St. Hilaire admitted at his deposition that he did not know if Lafaille was aware of the charges or complaints at the time of the August 9, 1996 incident, and did not know why Lafaille acted the way he did (Depo. at 144–46). *See Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir.1997) (plaintiff must show that the corporate agent who took the action was actually aware of the plaintiff's protected expression). St. Hilaire conceded that Lafaille sent him home because "he just got mad" (Depo. at 145–46). Accordingly, St. Hilaire cannot show a causal connection between the events and, thus, cannot prove the causal connection prong of his prima facie case.

St. Hilaire's conclusory statement that, "[i]t was common knowledge at Pep Boys that St. Hilaire filed the respective charges with the NAACP, EEOC, and the FCHR" (St. Hilaire's Opposition to Defendants' Motion for Summary Judgment, at 17), is insufficient to create a material issue of fact on his retaliation claim. Neither St. Hilaire's affidavit nor his deposition substantiates this contention. Nevertheless, an allegation of common knowledge is insufficient to prove that anyone at Pep Boys was specifically aware that St. Hilaire had filed a complaint. *Cf. Evans*, 131 F.3d at 962 (hearing court correctly found that allegations by non-movant based on common knowledge were not significantly probative because there was no indication that they could be reduced to admissible evidence at trial); *Fedrick v. Goodyear*

*Tire & Rubber Co.,* CIV.A.H–93–4088, 1996 WL 585474, at \*4 (S.D.Tex. July 22, 1996) (plaintiff's allegations of "common knowledge" were insufficient to prove that the manager who decided to demote plaintiff had knowledge that other similarly-situated non-protected employees had engaged in the same misconduct that resulted in plaintiff's demotion).

### 2. Working Full-time and Taking Sundays Off

Similarly, with respect to the Sundays off issue, St. Hilaire does not state who the manager was who told him that he had to work part-time if he wanted Sundays off, and never stated that this person had actual knowledge of his EEOC complaint. Thus, St. Hilaire does not show a causal connection between the events. Moreover, the only fact which St. Hilaire proffers to show that the denial was retaliatory is his claim that VanWick requested and received Sundays off without having to take a part-time position. As previously discussed, Defendants have proffered a legitimate, non-discriminatory reason for the employment decision, which has not been rebutted with probative evidence of pretext. Therefore, summary judgment will be granted for Defendants with respect to St. Hilaire's retaliation claim.

### E. Hostile Environment Claim

St. Hilaire next claims that he experienced a hostile work environment because: 1) he was yelled at and sent home for one day without pay on August 9, 1996 for arriving at work forty minutes late; and 2) an allegedly fraudulent 1995 evaluation placed into his personnel file foreclosed his promotional opportunities. Defendants argue that: 1) St. Hilaire conceded that the August 9, 1996 incident had nothing to do with his race or color; 2) that one incident of non-racial harassment does not create a racially hostile environment; 3) that St. Hilaire's failure to complain about the incident pursuant to the corporate harassment policy shields Pep Boys from liability; and 4) St. Hilaire's claim that the forged evaluation in his file and the failure to promote

created a racially hostile atmosphere was inappropriate as St. Hilaire could not meet the prima facie test. The Court agrees with Defendants' position.

 To prevail on his hostile environment claim, St. Hilaire must show that the conduct he complains of "altered the condition of the workplace, creating an objectively abusive and hostile atmosphere." *Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir.1995). Specifically, he must prove that: 1) he belongs to a protected group; 2) he was subject to "unwelcome" harassment; 3) the harassment was based on his race; 4) the harassment affected a "term, condition, or privilege" of employment in that it "was sufficiently severe and pervasive to alter the conditions of his employment and create an abusive working environment"; and 5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *See Prado v. L. Luria & Son, Inc.,* 975 F.Supp. 1349, 1355 (S.D.Fla.1997). Thus, in the area of racial discrimination, an employer who adopts a policy prohibiting harassment, and then takes prompt and effective action in responding to complaints, insulates itself from liability for the acts of its employees, who are co-workers of the plaintiff, once discovered. *See Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2272, 141 L.Ed.2d 633 (1998) (Thomas, J., dissenting).

 Title VII does not address generally offensive or unpleasant conduct. *See Thevenin v. Baptist Health Systems of South Fla.,* 931 F.Supp. 856, 859 (S.D.Fla. 1996). Title VII does not provide a cause of action for employees who are exposed to harassment that has no reference to race, sex or national origin. *See Brown v. Brown & Williamson Tobacco Corp.,* Civil Action No. 95–30281–LAC, 1996 WL 325890, at \*3 (N.D.Fla. Apr.11, 1996), *aff'd,* 111 F.3d 896 (11th Cir.1997).

 To determine whether Plaintiff's work environment was hostile or abu-

sive, this Court should consider: 1) the frequency of the alleged discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and 4) whether the conduct unreasonably interfered with Plaintiff's work performance. *See Prado,* 975 F.Supp. at 1355. Isolated incidents of offensive acts, however, are not sufficient to establish a hostile work environment. *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993).

 St. Hilaire admits that the only harassment he suffered was his treatment by Lafaille during the August 9, 1996 incident, which included being sent home without pay for arriving late to work. St. Hilaire testified that the alleged harassment had nothing to do with his race or color (Depo. at 165–66). One incident of non-racial harassment does not create a racially hostile environment. Moreover, St. Hilaire's admitted failure to complain (Depo. at 167), pursuant to Pep Boys' harassment policy shields Pep Boys from liability.

 St. Hilaire also claims that the allegedly fraudulent evaluation in his personnel file and Pep Boys' failure to promote him created a hostile environment. The evaluation and the failure to promote do not meet the fourth prong of the test—there is no evidence that the alleged harassment affected a term, condition or privilege of employment. As has been previously discussed, the record contains no probative evidence that the allegedly fraudulent evaluation had anything to do with St. Hilaire's failure to be promoted.

### IV. Conclusion

St. Hilaire has presented no evidence that his failure to be promoted was due to anything other than legitimate business reason—that the individuals Pep Boys hired were more qualified for the positions. He has provided no evidence that his 1995 Performance Evaluation with an allegedly forged signature was considered in this or in any other context. He has also admitted that he does not know if any other employees of Pep Boys received an evaluation with an allegedly forged signature.

St. Hilaire has also presented no evidence that he was sent home from work for a day without pay on August 9, 1996 in retaliation for his filing of a complaint with the EEOC. There is no evidence that supervisor Lafaille, who sent St. Hilaire home, was aware of the EEOC complaint. Moreover, aside from the loss of one day's pay, St. Hilaire suffered no substantial impact on his position with Pep Boys due to this incident. St. Hilaire's allegation that this incident was indicative of a racially hostile work environment must also fail, as Lafaille is also an African–American male, and St. Hilaire admitted that the incident had nothing to do with his race or color. Finally, St. Hilaire did not complain to anyone at Pep Boys about this incident notwithstanding Pep Boys' harassment policy.

St. Hilaire also cannot prove that he was discriminated against because he had to become a part-time employee when he insisted on Sunday as a day off. St. Hilaire, who worked in sales, admitted that the only other person whom he could identify as getting Sundays off while working full-time was assigned to Pep Boys' Customer Service department and, thus, did not have the same position or duties as he did. Based on the foregoing, it is accordingly

**ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment Against Plaintiff St. Hilaire [D.E. # 46] is **GRANTED** as to the Title VII, § 1981, and FCRA claims; that St. Hilaire's cause of action pursuant to the Whistle Blower Act is **REMANDED** to state court, and that Defendants' Motion to Sever the Claims of Plaintiffs Hirame St. Hilaire and Jenise Selby, and to Proceed With Separate Actions, or in the Alternative, for Separate Trials [D.E. # 51] is **DENIED AS MOOT** due to the granting of Defendants' Summary Judgment Motion against Plaintiff St. Hilaire as to the Title VII, § 1981, and FCRA claims,

and the remand to state court of his Whistle Blower Act claim.

**DONE AND ORDERED.**